## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| White Bear Yacht Club,<br><br>Plaintiff,<br><br>v.<br><br>Cincinnati Insurance Co., The<br><br>Defendant. | Case No. 21-cv-01741 (SRN/HB)<br><br><br>**Order on Motion to Compel<br>Examinations Under Oath** |

This matter is before this Court on Defendant Cincinnati Insurance Co.'s (Cincinnati) Motion to Compel Examinations Under Oath (EUO) [ECF No. 19].  For the reasons set forth below, the Court grants in part and denies in part the motion.  Relatedly, to the extent Plaintiff's argument at the hearing and through post-hearing briefing can be considered an oral motion to stay discovery, the Court denies that motion.

## I.      Background

Plaintiff White Bear Yacht Club (WBYC) insured multiple buildings at its social club in Dellwood, Minnesota against weather-related damage through Cincinnati. (Hammond Aff. Ex. 5 [ECF No. 15-1].)  In April and July 2019, wind and hailstorms allegedly damaged WBYC's property.  (Hammond Suppl. Aff. Ex. 7 [ECF No. 26-1].) WBYC submitted claims for the damage in May and December 2019, respectively.  (*Id.*)

On August 24, 2020, (more than a year after the claims) Cincinnati requested Examinations Under Oath (EUOs), pursuant to the insurance policy and Minnesota law, of WBYC representatives with knowledge of the wind and hail claims, as well as

documents and information about the history of repairs to the property, the current claims, and wind/hail claims WBYC made to other insurers in 2015 and 2017. (Hammond Suppl. Aff. Ex. 7.)  WBYC had previously submitted wind/hail damage claims for some of the same buildings to different insurers in 2015 and 2017, and Cincinnati sought to investigate the extent to which that prior damage had been paid for and repaired.  (Kane Aff. Exs. B-C, E at 2-3 [ECF No. 22-1].)  In response, WBYC demanded an appraisal of the covered loss and named its appraiser.  (Hammond Aff. Ex. 1 [ECF No. 15-1].)  Cincinnati named its appraiser but objected to advancing the appraisal process until the parties conducted the requested EUOs and resolved disputes regarding WBYC's document disclosure.  (Hammond Aff. Ex. 2 [ECF No. 15-1]; Hammond Suppl. Aff. Ex. 13 [ECF No. 26-1].)  After resolving the document disputes, the parties conducted an EUO of WBYC's General Manager, Christopher Nathlich, in March 2021.  (Hammond Suppl. Aff. Exs. 20–21 [ECF No. 26-1].)  Cincinnati requested additional EUOs of individuals Nathlich identified as potential sources of more information, but the parties disagreed about whether the insurance policy afforded Cincinatti that right and whether the EUOs would provide useful information to resolve the claims.  (*Id.* Exs. 24–30 [ECF No. 26-1].)

During this disagreement, WBYC's appraiser sought to work with Cincinnati's appraiser to select an appraisal umpire, but they were unable to agree on a person.  (*Id.* Exs. 25, 29; Hammond Aff. Ex. 6 [ECF No. 15-1].)  WBYC then filed a case in Minnesota state court seeking, in part, a declaration and order compelling Cincinnati to participate in the appraisal, appointing an umpire, and staying the lawsuit until

2

completion of the appraisal.  (ECF No. 1-1 at 7.)  Cincinnati removed the case to federal court.  (ECF No. 1.)

The parties continued negotiations, and WBYC eventually agreed that all individuals then affiliated with the club from whom Cincinnati requested EUOs would appear so long as the parties could select an appraisal umpire and schedule the appraisal. (Hammond Suppl. Aff. Ex. 31 [ECF No. 26-1].)  Cincinnati offered dates for the EUOs and divulged that it planned to subpoena three people formerly affiliated with WBYC, but did not acknowledge WBYC's condition to advance the appraisal.  (*Id.* Ex. 32 [ECF No. 26-1].)  The parties failed to resolve their disagreements on the EUOs and appraisal, after which WBYC filed a motion to compel appraisal [ECF No. 13][1] and Cincinnati filed the current motion to compel EUOs.  (Hammond Suppl. Aff. Ex. 33 [ECF No. 26-1].) The Court held a hearing on Cincinnati's motion on November 2, 2021.  (Minutes 11/2/2021 [ECF No. 29].)  The Court ordered supplemental briefing based on the parties' discussion of the issues in the hearing, and took the matter under advisement upon receipt of those briefs.  [ECF Nos. 29, 34.]

## II.    Standard of Review

Cincinnati's motion involves the interpretation of the insurance policy and Minnesota law on the right to conduct EUOs of an insured's representatives, and a

---

[1] WBYC filed its motion to compel appraisal before this Court, but the Court concluded that because WBYC's complaint sought relief in the form of compelled appraisal, the motion was effectively dispositive on that relief, so District precedent required the District Judge to resolve it.  (ECF No. 27.)  That motion is now pending before the District Judge.  (ECF No. 28.)

question of Cincinnati's right to conduct discovery through subpoenas in this litigation even though it has not completed appraisal. (Def.'s Mem. at 8–9 [ECF No 21.) Minnesota courts apply general principles of contract interpretation to insurance policies, giving unambiguous policy language its ordinary meaning to give effect to the parties' intention as it appears from the entire contract. *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960). Any reasonable doubt about the meaning of policy language must be resolved in favor of the insured. *Id.*

For statutory interpretation, "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2020). Minnesota courts first determine whether the statute's language is ambiguous on its face, construing words and phrases according to their ordinary meaning and within the context of the statutory provisions read as a whole. *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019); *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). The court applies unambiguous language without further construction. *City of Grant*, 636 N.W.2d at 312.

## III.  Discussion

### A.  The Motion is Not Moot as to the EUOs.

WBYC argues that the motion to compel EUOs is moot because it agreed, before and during the hearing, to produce for EUOs the people Cincinnati requested. (Pl.'s Suppl. Mem. at 2–4 [ECF No. 32].)

The motion is not clearly moot. Article III limits the Court's jurisdiction to cases and controversies under the United States Constitution. U.S. Const. Art. III, § 2. A case

4

is moot and no longer a case or controversy when the parties lack a legally cognizable interest in the outcome.  *Council on Am.-Islamic Rels.-Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 376 (D. Minn. 2020).  If an alleged deprivation of a legal right is on-going or there is a reasonable prospect that it will continue throughout the enforcement action, there is a live controversy.  *Id.* at 376–77.  Cincinnati claims the legal right under the policy to compel WBYC to produce representatives *of Cincinnati's choice for EUOs*.  And the Court understands WBYC agreement to those EUOs to be contingent on Cincinnati advancing the appraisal.  (*See* Hammond Suppl. Aff. Exs. 31-33; Pl.'s Suppl. Mem. at 4.)  Cincinnati represented during the hearing that it did not oppose appraisal, but its post-hearing supplemental brief conveys that it is not willing to advance the appraisal until it conducts the EUOs *and* subpoenas third parties with knowledge about WBYC's 2015 and 2017 claims.  (Def.'s Suppl. Mem. at 7-8 [ECF No. 30].)  WBYC, in turn, objects to any attempt by Cincinnati to use subpoenas (or conduct other discovery under the Federal Rules of Civil Procedure) before the appraisal.  (Pl.'s Suppl. Mem. at 4.)  So long as WBYC's agreement to submit to the requested EUOs is contingent on a concession about timing that Cincinnati is not willing to make, Cincinnati's claim that the policy gives it the right to compel the EUOs presents a live controversy involving the parties' legal rights and obligations.

### B.   Cincinnati May Conduct Multiple EUOs But WBYC May Choose Its Representatives

In relevant part, the insurance policy provides that "[Cincinnati] may examine any insured under oath, while not in the presence of any other insured and at such times as

may be reasonably required, about any matter relating to this insurance or the claim."
(Kane Aff. Ex. A § G(b) [ECF No. 22-1].)  The Minnesota Standard Fire Insurance
Policy governs the policy and requires that the contract include a provision stating "[t]he
insured, as often as may be reasonably required, shall . . . within a reasonable period after
demand by this company, submit to examinations under oath by any person named by
this company, and subscribe the oath."  Minn. Stat. § 65A.01, subd. 3 (2021).  The
provision need not use the exact language so long as the "policy or contract . . . afford[s]
the insured all the rights and benefits of the [standard policy]."  *Id.*, subd. 1.  *See also*
*Poehler v. Cincinnati Ins. Co.*, 899 N.W.2d 135, 145 (Minn. 2017).  As a general matter,
the policy and statute require an insured to submit to at least one EUO as reasonably
necessary to assist the insurer's investigation.  *See, e.g.*, *Metropolitan Prop. & Cas. Ins.*
*Co. v. King*, No. C9-02-1737, 2003 WL 21008323, at *4 (Minn. App. May 6, 2003).

Cincinnati argues that the policy and statute obligate WBYC to submit to multiple
EUOs of representatives identified by Cincinnati.  (Def.'s Mem. at 9–10 [ECF No. 21].)
WBYC responds that Cincinnati may conduct only one EUO.  (Pl.'s Mem. at 10–11
[ECF No. 25].)  The Court reads the policy and statute to allow for multiple EUOs.  The
contract language does not explicitly limit Cincinnati to one EUO, and allows Cincinnati
to examine the insured "at such *times* as may be reasonably required."  (Kane Aff. Ex. A
§ G(b) (emphasis added).)  The statutory Standard Policy language similarly allows for
EUOs "as often as may be reasonably necessary."  Minn. Stat. § 65A.01, subd. 3.  The
Court finds that these provisions unambiguously provide that Cincinnati may request
multiple EUOs at different times, subject to their reasonableness.

But the Court disagrees with Cincinnati's next argument—that the policy compels WBYC to submit the specific representatives *designated by Cincinnati* to EUOs, including those WBYC board members Cincinnati sought after examining Nathlich. (Def.'s Mem. at 9–10.)  WBYC responds that the statute and the policy provide only that the "insured" must submit to EUOs, and as the "insured" organization, WBYC may select who from the organization will represent it.  (Pl.'s Mem. at 10–11.)  Neither the statute nor the policy define "insured" or indicate who from an insured organization must sit for an EUO.  The surrounding language of the policy and statute provide no guidance. Therefore, the contract is ambiguous.

The Court must read any ambiguity in the policy in the insured's favor.  *Bobich*, 104 N.W.2d at 24.  The parties do not cite, and the Court has not located, cases in which Minnesota state courts or judges in this District have addressed this question, but other federal courts have applied this rule to similar EUO provisions to conclude that "an insured" organization may select its representative for an EUO and need not consent to an insurer's demand to examine any specific person or multiple people.  *See, e.g., Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, 502 F. Supp. 2d 1257, 1259, 61–64 (S.D. Fla. 2007).  In *Florida Gaming*, the insured corporation submitted its general manager for an EUO, after which the insurer demanded additional EUOs of others because the general manager reported little knowledge about the repair and damage estimates in the claim. *Id.* at 1260, 62–63.  The policy required "the insured" to submit to EUOs, without definition or direction.  *Id.* at 1259, 62.  The court acknowledged that "the insured" could mean "the insured, its employees, representatives, agents, and others who assist it in

7

formulating its claim," but instead construed the term in the insured's favor and concluded that the policy allowed the corporation to choose its representative for the EUO. *Id.* at 1262–64. *See also Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1325–26 (M.D. Fla. 2002) (concluding insured complied with EUO requirement when it produced a member of the corporation's board of directors for an EUO, even though the board member could not answer all the insurer's questions).

In *Hutch Enterprises*, a insured corporation sued Cincinnati to recover under a commercial insurance policy for storm damage to its property. *Hutch Enterprises, Inc. v. Cincinnati Ins. Co.*, No. 16-CV-01010-WMS-JJM, 2017 WL 3601899, at *1 (W.D.N.Y. Apr. 12, 2017). The corporation produced its owner for an EUO, but Cincinnati argued that it nevertheless breached the contract because it failed to produce its public adjustor for a later EUO when the owner was not able to answer many of Cincinnati's questions. *Id.* at *2. The court concluded that the policy entitled Cincinnati to request the "insured" for EUOs, meaning only the corporation, so it complied with policy by producing its owner. *Id.* at *3. Similarly, here, the Court reads the insurance policy as allowing WBYC to select its representatives for EUOs. It does not require WBYC to present any specific witness designated by Cincinnati.

Cincinnati relatedly argues that WBYC must at least put forth representatives with knowledge of the claim, that Nathlich lacked sufficient knowledge, and that WBYC has not allowed EUOs of more knowledgeable people. (Def.'s Mem. at 9–10; Def.'s Suppl. Mem. at 5-6.) WBYC responds that the people Cincinnati seeks to examine are current board members and employees who do not have relevant information, as compared to

8

knowledgeable contractors, insurance adjustors, and roofing experts who could meaningfully contribute to Cincinnati's investigation.  (Pl.'s Mem. at 11.)

The Court agrees that when the insured is an organization (as opposed to an individual), then implicit in the insured's obligation to submit to an EUO is the obligation to provide a representative who is reasonably prepared to address the organization's knowledge.  The EUO requirement is otherwise rendered meaningless if the insured can thwart the insurer's access to information about the claim by presenting a representative who cannot testify to the knowledge within the control of the insured entity.  In *200 Leslie Condominium Association, Inc. v. QBE Insurance Corp.*, the court concluded after a trial that an insured failed to satisfy the EUO requirement because its representative did not adequately prepare for the examination and could not answer most questions.  965 F. Supp. 2d 1386, 1390, 97, 1401 (S.D. Fla. 2013).  The court found from the evidence that the representative "was not provided with a copy of the EUO Letter prior to the EUO . . . [,] did not look at any minutes or records of 200 Leslie in preparation for the EUO . . . [, and his] only preparation for the EUO consisted of meeting with Golant and going over the Proof of Loss for about five minutes."  *Id.* at 1397.  The Court found that he "did not reasonably prepare for the EUO and, as a result, did not adequately respond to QBE's inquiries regarding matters relating to the insurance or the claim, including 200 Leslie's books and records, as required by the QBE policy."  *Id.*  For comparison, in *Florida Gaming*, the court reviewed the EUO transcript and concluded that though the representative "had little knowledge regarding the repair and damage estimates in the proof of loss," 502 F. Supp. 2d at 1263, "this does not mean that [he] was not the most

knowledgeable person fitting the definition of 'the insured' and that his examination does not satisfy the requirements of the examination under oath," *id.* at 1263-64. *See also Paulucci*, 190 F. Supp. 2d at 1326 (reviewing the EUO transcript and concluding that even though the representative could not answer all the questions, there was no indication that he was not the most knowledgeable person.)

But here, while there is attorney argument, there is no *evidence*—such as, for example, excerpts from the EUO transcript—that Nathlich was not reasonably prepared to testify about WBYC's knowledge as to its former and current insurance claims and property repairs. Thus, there is nothing from which the Court can conclude WBYC, as an entity, possessed information responsive to those questions that Nathlich failed to gather in preparation for his EUO. Without such evidence, the Court cannot conclude that WBYC breached the EUO requirement of the policy. If Cincinnati believes WBYC possesses additional information that Nathlich did not have at the time of his prior EUO, then, as the Court has already held, it is free to seek another EUO (although not to insist on any particular representative). If WBYC refuses to provide a witness for an EUO, or provides a witness who was not reasonably prepared to speak to the knowledge of the entity, Cincinnati may seek relief from the Court upon a showing that its request for an additional EUO was a reasonable one and that WBYC failed to comply with its obligation under the policy.

### C.   Cincinnati May Pursue Discovery Into Matters Relevant to Its Defenses

Cincinnati's motion requested that the Court declare that Cincinnati is entitled to subpoena several specific people formerly associated with WBYC.  (Def.'s Proposed Order [ECF No. 24].)  Cincinnati conceded that at the time it filed its motion, it had not sought any subpoenas to depose those people, but that WBYC had stated it would oppose any subpoena.  (Def.'s Mem. at 9, n.1.)

Because no subpoenas have issued, the parties' dispute about whether Cincinnati is entitled to serve and enforce any particular subpoena does not present a live controversy for the Court.  Accordingly, the Court denies that part of the motion.

But as presented during the hearing and in their post-hearing briefs, WBYC requests that the Court affirmatively stay any discovery pending a ruling on WBYC's motion to compel an appraisal and—if that motion is granted—pending completion of the appraisal.  (Def.'s Suppl. Mem.; Pl.'s Suppl. Mem. at 4–7.)  Cincinnati argues that it should be able to use discovery tools, including subpoenas, to discover information relevant to its defense against WBYC's breach of contract and declaratory claims.  (Def.'s Suppl. Mem. at 6.)  It also argues that the discovery should occur before appraisal, since the information sought would be "helpful" to the appraisal panel and relevant to reaching a "just determination" of the extent of WBYC's covered loss.  (*Id.* at 7–8.)  WBYC responds that discovery and continued litigation prior to appraisal run contrary to Minnesota law, so the Court should stay discovery at least until the District Judge resolves its motion to compel appraisal.  (Pl.'s Suppl. Mem. at 4–8.)

The Court is not convinced that a stay of discovery is appropriate in this case. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). WBYC claims that Cincinnati breached the contract by failing to fairly adjust and pay the loss, thereby damaging WBYC; and that WBYC is entitled to a declaration that the Policy covers damages from this loss. (Compl. at 3–4.) Cincinnati argues that it should be able to pursue discovery into facts showing whether WBYC intentionally concealed unrepaired damage from 2015 and 2017 in its current claims. (Def.'s Suppl. Mem. at 7-8.) The policy states that Cincinnati will not provide coverage to an insured who willfully and with intent to defraud conceals material facts concerning the property or claim. (Kane Aff. Ex. A § D.) The information Cincinnati seeks is relevant to whether this provision may properly be invoked as a defense against WBYC's claim of liability. *See Collins v. USAA Prop. & Cas. Ins. Co.*, 580 N.W.2d 55, 56 (Minn. App. 1998) (voiding a policy when the insured intentionally made false representations about the value of the loss to defraud the insurer).

Cincinnati also argues for discovery into facts showing WBYC failed to cooperate in the investigation of the claims to Cincinnati's prejudice. (Def.'s Suppl. Mem. at 7-8.) The policy requires WBYC to cooperate with Cincinnati's investigation, (Hammond Aff. Ex. 5 at 64–65), and a lack of cooperation by an insured prejudicing an insurer's position can exclude coverage for a claim, *Parr v. Gonzalez*, 669 N.W.2d 401, 407 (Minn. App. 2003). This information is therefore relevant to Cincinnati's defense against liability. WBYC does not contest that this information would be relevant to Cincinnati's defense

nor that discovery into those matters would be impermissible in litigation, though it suggests that such discovery is merely a fishing expedition in the hopes of supporting an unsubstantiated accusation of fraud.  (Pl.'s Suppl. Mem. at 8.)

WBYC argues for a stay by pointing to *Axis Surplus Ins. Co. v. Condor Corp.*, Case No. 20-cv-789 (DSD/KMM), 2020 WL 7974330, at *2–3 (D. Minn. Oct. 8, 2020), *aff'd*, 19 F.4th 1062 (8th Cir. 2021), in which the court granted a motion to compel appraisal and stayed litigation pending the appraisal.  *See also Snyder v. Am. Fam. Ins. Co.*, Case No. 16-cv-458 (DWF/JSM), 2016 WL 5796838, at *3–6 (D. Minn. Oct. 3, 2016) (granting the same).  But these cases do not analyze the arguments for or against a stay, or even indicate that either party disputed the requested stay or, conversely, that either party sought to conduct discovery into claims and defenses involving the insurer's liability while the appraisal was pending.  Therefore, these cases are not persuasive on WBYC's argument that the Court must routinely stay discovery pending appraisal even though a party seeks information relevant to its claims or defenses.

WBYC also argues it only brought this litigation based on Cincinnati's breach of contract for refusing to participate in appraisal, and that Cincinnati must not be rewarded for its breach by now being allowed to litigate coverage issues that would otherwise have to wait until after appraisal.  (Pl.'s Suppl. Mem. at 5.)  As discussed above, WBYC's complaint is not limited to Cincinnati's failure to appraise and WBYC's request to compel appraisal, but also includes claims of Cincinnati's breach resulting in damage and a declaration of coverage under the policy.  Cincinnati is entitled to pursue discovery into

the defenses against those claims, and the Court sees no reason to delay that discovery while the appraisal is pending.[2]

But to the extent that Cincinnati suggests the appraisal, if granted, should be deferred until it obtains whatever discovery it seeks so that it can present the fruits of that discovery to assist the appraisal panel, (Def.'s Suppl. Mem. at 4–5, 7–8), the Court disagrees. Cincinnati points out that it could not obtain information from WBYC during its claim investigation regarding whether WBYC repaired the wind and hail damage from the 2015 and 2017 storms. (*Id.*) This information would potentially assist the appraisal panel in differentiating between damage from those uncovered storm events and damage from the covered storm events in 2019, and therefore appraising the amount of covered loss. It further argues that "[i]t would be pointless and a waste of time and resources to proceed with appraisal without first compelling WBYC to respond to Cincinnati's discovery requests."[3] (*Id.* at 7.)

Cincinnati concedes that its right to investigate WBYC's insurance claims (presumably including the information it can gather for the appraisal) is governed by the terms of the insurance policy. (Def.'s Suppl. Mem. at 4.) While the Court sees no basis to stay discovery or to preclude Cincinnati from presenting any information it may obtain to the appraisal panel to the extent relevant to the scope of their inquiry, Cincinnati does

---

[2] WBYC has not, for example, shown that the results of the appraisal are likely to moot the need for Cincinnati to take that discovery in support of its coverage defenses.

[3] The Court assumes this is a reference to the additional EUOs Cincinnati has moved to compel, as Cincinnati has not discussed or submitted, let alone moved to compel responses to, discovery requests propounded to WBYC under the Federal Rules of Civil Procedure.

14

not point to any provision in the policy that would allow Cincinnati to insist that discovery pursuant to the Federal Rules of Civil Procedure be completed before the appraisal may go forward. Appraisal "is generally intended to take place before suit is filed . . . [and] is generally understood to be a condition precedent to suit." *Quade v. Secura Ins.*, 814 N.W.2d 703, 708 (Minn. 2012). Appraisal awards will usually be set before litigation commences or proceeds, so discovery will not be available to assist an insurer's investigation. Appraisal should occur when the policy conditions for it are satisfied, even if the insurer's investigation has not answered all the insurer's questions or the appraisal panel is faced with difficult factual questions related to the cause and cost of a claimed loss. *McCoy v. Am. Fam. Mut. Ins. Co.*, 189 F. Supp. 3d 896, 902 (D. Minn. 2016). Cincinnati points to no caselaw, and the Court has found none, that holds in favor of deferring the appraisal, if it is granted in this case by the District Judge, until after discovery—even discovery that might yield information relevant to the appraisal—has been completed.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Examinations Under Oath [ECF No. 19] is **GRANTED IN PART AND DENIED IN PART** as set forth herein. **IT IS FURTHER ORDERED** that Plaintiff's oral motion to stay discovery pending appraisal is **DENIED.**

Dated: January 28, 2022

*/s Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge